**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| DAVID PENNY and DREAMA STANLEY, INDIVIDUALLY AND AS NATURAL PARENTS AND NEXT FRIEND OF H.P., A MINOR | § § § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. H-12-3007 |
| NEW CANEY INDEPENDENT SCHOOL DISTRICT, *et al.*, | § § § | |
| Defendants. | § § | |

**MEMORANDUM AND ORDER**

The plaintiffs, David Penney and Dreama Stanley, individually and on behalf of their daughter, H.P., sued the New Caney Independent School District ("NCISD") and several of its employees under 42 U.S.C. § 1983, Section 504 of the Rehabilitation Act of 1973 ("§ 504"), 29 U.S.C. § 794, Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12131 *et seq.*, and Texas state common law. The plaintiffs claim that H.P. was assaulted and injured at school by an aide in her special-education class. The defendants moved to dismiss. (Docket Entry No. 5). The plaintiffs moved for leave to amend and attached a proposed amended complaint, (Docket Entries No. 14, 15), and responded to the motion to dismiss in light of the proposed amended complaint, (Docket Entry No. 16). NCISD replied. (Docket Entry No. 17).

Based on the pleadings, the motions and response, and the relevant law, this court grants the plaintiffs' motion for leave to amend, (Docket Entry No. 14), and grants the defendants' motion to dismiss in part and denies it in part. This court grants the motion to dismiss the claims against Franklin and Baecker, the claims against Thomas and Barnett in their official capacities, the § 1983

claim against NCISD, and all tort claims.  The motion to dismiss the § 504 and ADA claims and the § 1983 claim against Barnett in her individual capacity is denied.  The reasons for these rulings are explained below.

## I.      Background[1]

H.P. is a 13 year-old girl classified as a student in need of special-education services by NCISD.  She receives instruction in a self-contained special-education classroom at New Caney Elementary School.  On October 11, 2010, H.P. came home with marks and abrasions that had not been present when she left home that day.  H.P. told her parents that the marks were made by Tracie Barnett, a special-education aide.  Since then, H.P. has been reluctant to attend school, has exhibited signs of posttraumatic stress disorder, and has required counseling and therapy.

The plaintiffs sued NCISD, claiming that H.P. has suffered as a result of Barnett's acts and NCISD's negligence in failing to provide appropriate services to H.P. and to adequately train and supervise special-education staff.  The plaintiffs also sued several school employees in their official capacities: Kenn Franklin, the NCISD Superintendent; Sandra Baecker, the NCISD Director of Special Education; and Leslie Thomas, the New Caney Elementary School principal.  The plaintiffs claimed that the "abuse and humiliation" inflicted by Barnett and other NCISD staff in the form of the discipline they administered to the students, including H.P., was inappropriate and discriminatory based on the students' disabilities.  The plaintiffs also claimed that NCISD's failure to provide adequate supervision and training to Barnett and other special-education staff to prevent such abusive discipline was negligent and discriminatory.  The plaintiffs alleged that before Barnett allegedly abused H.P., NCISD was aware that Barnett had been investigated and reprimanded for

---

[1]  These allegations, which this court takes as true for purposes of ruling on the motion to dismiss, come from the plaintiffs' complaint, (Docket Entry No. 1), as amended, (Docket Entry No. 15), unless otherwise indicated.

"abusing and/or improperly disciplining" students in the self-contained special education classroom. The plaintiffs also alleged that Barnett and other staff were aware that special-needs students would have difficulty reporting abuse. The plaintiffs asserted that NCISD was responsible for the actions of special-education staff either directly or under a *respondeat superior* theory.

The plaintiffs also alleged that NCISD discriminated against H.P. by failing to provide her appropriate services, impeding her educational development, depriving her of educational benefits, and depriving her of a Free and Appropriate Public Education ("FAPE"). The plaintiffs asserted claims under 42 U.S.C. § 1983 for violations of H.P.'s due process rights and under § 504 and the ADA by the failure to accommodate H.P.'s disabilities and educational needs.

On December 11, 2012, NCISD moved to dismiss. (Docket Entry No. 5). NCISD argued that the plaintiffs' tort claims failed as a matter of law based on state sovereign immunity. (*Id.* at 5). NCISD moved to dismiss the § 1983, § 504, and ADA claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to allege facts sufficient to support those claims. NCISD also argued that the plaintiffs had failed to exhaust their administrative remedies before asserting the § 504 and ADA claims. (*Id.* at 12). NCISD moved to dismiss all claims against the individual defendants based on qualified immunity. (*Id.* at 16).

On January 11, 2013, the plaintiffs moved for leave to amend their pleadings and filed a proposed first amended complaint. (Docket Entries No. 10, 11). This court held a hearing on February 1, 2013. (Docket Entry No. 12). The court ordered the plaintiffs to respond to the motion to dismiss. (*Id.*) On February 15, 2013, the plaintiffs responded to the motion to dismiss, moved again for leave to amend, and filed a proposed second amended complaint. (Docket Entries No. 14, 15, 16). This court terminated the first motion for leave to amend as moot in light of the more recent motion. On March 8, 2013, NCISD replied. (Docket Entry No. 17).

The proposed second amended complaint removed Franklin and Baecker as defendants, and removed claims against Thomas in her official capacity. The complaint asserted claims against NCISD and against Thomas in her individual capacity, and named Tracie Barnett as a defendant. (Docket Entry No. 15; *see also* Docket Entry No. 16, at 1). In their response to the motion to dismiss based on this proposed second amended complaint, the plaintiffs argue that the § 1983, § 504, and ADA claims contain sufficient allegations to survive dismissal. They argue that the administrative-exhaustion requirement does not bar the § 504 and ADA claims. And they argue that Thomas and Barnett are not entitled to qualified immunity because they both knew or should have known that H.P.'s clearly established rights were being violated.

The grounds for dismissal, and the responses, are discussed below.

## II.    The Legal Standard for Motions to Dismiss

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. 544). The Court explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

When a plaintiff's complaint fails to state a claim, a district court generally should provide

4

the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case"); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion." (internal citation omitted)).   "Denial of leave to amend may be warranted for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of a proposed amendment." *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010) (emphasis added).   A district court has broad discretion to dismiss a complaint without leave to amend "where the plaintiff has previously been granted leave to amend [to cure pleading deficiencies] and has subsequently failed to add the requisite particularity to its claims[.]" *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009); *see also Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) (affirming a district court's dismissal for failure to state a claim without leave to amend after the court "instructed [the plaintiffs] to plead their fraud claim with greater particularity, but the amended complaint was still woefully inadequate").

## III.   Analysis

### A.     Parties Changed By the Amended Complaint

The plaintiffs' amended complaint removes the claims against Franklin and Baecker.   The plaintiffs also eliminated all claims against Thomas in her official capacity.   According to the plaintiffs' admissions and amended pleadings, all claims against Franklin and Baecker, and all claims against Thomas in her official capacity, are abandoned.

5

It is unclear from the amended complaint whether the plaintiffs allege claims against Barnett in her official and individual capacities.  To the extent the plaintiffs sued Barnett in her official capacity, those claims unnecessarily duplicate claims against NCISD.  A plaintiff may not maintain suit against a governmental entity, such as NCISD, and an employee of that governmental entity in her official capacity.  "Suing a government official in his or her official capacity is another way of pleading against the entity of which the official is an agent." *Brittany B. v. Martinez*, 494 F. Supp. 2d 534, 539 (W.D. Tex. 2007) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).  Any claim against Barnett in her official capacity is dismissed with prejudice.

### B.    Claims Under § 1983

The plaintiffs claim that the acts and omissions of the defendants violated the Fourteenth Amendment by depriving H.P. of the rights to life, liberty, and bodily integrity.[2]  The plaintiffs also claim that the alleged failures of the defendants violated the Fourteenth Amendment by failing to enact procedures to protect H.P. from a known and inherently dangerous situation.  The defendants argue that the § 1983 claims fail because the facts alleged do not support liability.

To hold NCISD liable, the plaintiffs must allege that (1) the constitutional violation was caused as the direct result of the execution of an official "custom" or "policy"; (2) the custom or policy was approved or sanctioned by NCISD's final policymaker; (3) the final policymaker acted with deliberate indifference; and (4) the custom or policy was the "moving force" behind the violation.  *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403–04 (1997); *Doe v. Hillsboro*

---

[2]  The plaintiffs also appear to base their § 1983 claims in part on an alleged violation of Ferren's statutory education rights.  To the extent such a claim duplicates the plaintiffs' claims under the Rehabilitation Act and the ADA, it must be dismissed.  *See, e.g.*, *Pena v. Bexar County*, 726 F. Supp. 2d 675, 688–90 (W.D. Tex. 2010) (explaining that because the Rehabilitation Act and ADA offer sufficient remedies, § 1983 cannot be used as an alternative method to enforce the rights guaranteed by those statutes).  As explained below, however, the plaintiffs' claims under the ADA and §504 of the Rehabilitation Act survive dismissal.

*Indep. Sch. Dist.*, 113 F.3d 1412, 1416 (5th Cir. 1997) (en banc). "Municipal liability cannot be sustained under a theory of *respondeat superior*. [T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (alteration in original) (citing *Brown*, 520 U.S. at 403; *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)) (internal quotation marks omitted). "Texas law unequivocally delegates to [a school district's] Board [of Trustees] 'the exclusive power and duty to govern and oversee the management of the public schools of the district.'" *Id.* (quoting TEX. EDUC. CODE ANN. § 11.151(b)).

The plaintiffs must demonstrate that NCISD's Board of Trustees adopted an unconstitutional policy or that it otherwise knew about or acquiesced in a permanent and deeply embedded abusive and unconstitutional practice. *See Piotrowski*, 237 F.3d at 578–79. Isolated violations of law by NCISD's employees cannot constitute a custom or policy by NCISD's Board of Trustees. *See id.* at 578; *see also Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002). The plaintiffs must allege that NCISD's Board of Trustees adopted a policy that caused H.P.'s injuries and that it adopted it with deliberate indifference to its known or obvious consequences in violating H.P.'s federally protected rights. *See Snyder v. Trepagnier*, 142 F.3d 791, 795 (5th Cir. 1998); *Teal v. City of Houston*, 523 F. Supp. 2d 555, 563 (S.D. Tex. 2007). When a plaintiff bases her claim on a failure to implement or enforce a policy or custom, the facts alleged must support an inference of deliberate indifference to the plaintiff's constitutional rights. *See Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 753–54, 755–56 (5th Cir. 1993). To show that the policy allegedly adopted was the "moving force" behind the constitutional violation, there must be a direct causal link between the alleged policy and the claimed constitutional injury. *Snyder*, 142 F.3d at 795; *Teal*, 523 F. Supp.

2d at 563; *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).

The plaintiffs' complaint, as amended, fails to allege facts that would show deliberate indifference.  The plaintiffs do not allege that NCISD had a policy of permitting student abuse.  Nor do the plaintiffs allege that NCISD lacked policies requiring it to train, supervise, and discipline employees.

The plaintiffs allege that NCISD failed to enact or implement policies sufficient to prevent abuse and failed to provide adequate training, supervising, and discipline for employees.  A supervisory defendant "'must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.  They must in other words act either knowingly or with deliberate, reckless indifference.'"  *Gonzalez*, 996 F.2d at 761 (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992–93 (7th Cir. 1988)).  The issue is whether the proposed second amended complaint adequately pleads deliberate indifference, which, in this context, requires NCISD's Board of Trustees "authorizing, tolerating, or condoning [physical] abuse of students by teachers."  *Foster v. McLeod Indep. Sch. Dist.*, 2009 WL 175154, at *5 (E.D. Tex. Jan. 23, 2009) (citing *Gonzalez*, 996 F.2d at 761).

The plaintiffs argue that NCISD had actual notice that Barnett posed a threat to H.P.'s constitutional rights and failed to prevent the abuse based on the following allegations:

> A request of Ms. Barnet[t]'s employment records revealed that her pre-employment testing indicated that she believed that power and control are the best measures of discipline when dealing with students. . . . Despite this obvious warning sign, Ms. Barnet[t] was hired to be a special education aide in the self-contained special education classroom that H.P. was assigned to.  There is no documentation in Ms. Barnet[t]'s file that anyone from New Caney ISD counseled or informed Ms. Barnet[t] that power and control are not the best measures of discipline.
>
> On or about May 17, 2010, a substitute teacher at New Caney Elementary School documented verbal and physical abuse by Ms. Barnet[t] to students, including H.P., in the self-contained special education classroom as well as the denial of water and

8

other basic needs. These allegations were reported to Defendant Leslie Thomas by New Caney ISD substitute teacher Scott Mattlage. . . . Ms. Barnet[t] was apparently reprimanded for her heinous actions, but there is no indication in her employment file that she received any subsequent training or remediation regarding her interactions with and instruction to students.

(Docket Entry No. 15, ¶¶ 3–4).

Taking these allegations as true and in the light most favorable to the plaintiffs, the allegations do not adequately plead deliberate indifference. The only information that NCISD had when it hired Barnett that suggests any questionable attitude toward discipline was an answer to a "Survey of Knowledge." Barnett was required to complete the survey during the application process. One question asked whether the "Teacher Assistant should [ ]ever discipline a child without the teacher's permission." Barnett answered negatively. Another question asked whether "[p]ower and control are the best measures of discipline." Barnett answered affirmatively. Another question asked whether "[o]ne tactic for discipline is to use planned ignoring." Barnett answered negatively. (Docket Entry No. 15, Ex. A, Survey of Knowledge). The only answer plaintiffs point to is the answer to the question about power and control. The plaintiffs do not explain why an answer indicating that "power and control" are appropriate measures of discipline put NCISD on notice that Barnett would likely administer abusive discipline, physical or otherwise, to special-education students. Nor do the plaintiffs explain why the "Survey of Knowledge" plausibly shows deliberate indifference when Barnett correctly answered the question asking whether she knew she could "never discipline a child without the teacher's permission." (*Id.*)

As to the May 17, 2010 incident, the allegations in, and the exhibits attached to, the amended complaint show that NCISD investigated the incident promptly after it was reported and disciplined Barnett for her conduct. The conduct that was reported to NCISD and investigated in May 2010 differed significantly than the abuse H.P. allegedly suffered in October 2010. In May, NCISD

investigated whether Barnett withheld water from the special-education students and whether she slapped a ruler on her own hand and asked students if they "wanted the ruler." (Docket Entry No. 15, Ex. B, NCISD Investigation Report). Barnett was reprimanded and given specific orders to prevent a recurrence. NCISD issued the following orders: (1) "You are directed to make sure students are provided ample access to water throughout the school day"; and (2) "Holding a ruler implies a threat. You are directed to never hold a ruler or any other object that could be construed as intimidation. Do not engage in any behavior with students that could be construed as intimidation." (*Id.*) The plaintiffs' allegations and exhibits show that in May 2010, NCISD had a report of different conduct than in this suit and did not condone the reported conduct. The allegations as to the May 2010 reported conduct, in combination with the preemployment questionnaire, do not plead deliberate indifference under the applicable law. *See, e.g.*, *Foster*, 2009 WL 175154, at *4 (finding no deliberate indifference toward a risk that a teacher would sexually assault a student when the teacher was interviewed and background-checked before hire, was instructed not to have intimate personal relationships with any student, and was counseled to seek guidance on any issues that might arise in his duties as an educator). The orders and reprimand Barnett received similarly undercut the allegation that "[t]here is no documentation in Ms. Barnet[t]'s file that anyone from New Caney ISD counseled or informed Ms. Barnett that power and control are not the best measures of discipline." (Docket Entry No. 15, ¶ 4).

The plaintiffs' allegations do not make a plausible claim NCISD was deliberately indifferent to a risk that Barnett would abusively discipline special-education students. Nor do the allegations sufficiently claim that NCISD was deliberately indifferent to H.P.'s rights in devising and implementing policies to train, supervise, and disciplining special-education aides. The plaintiffs' § 1983 claim must be dismissed. Because amendment has twice failed to cure this defect, further

leave to amend would be futile.  The claims are dismissed with prejudice and without leave to amend.

### C.    Claims Under § 504 and the ADA

NCISD initially moved to dismiss these claims on the grounds that the plaintiffs failed to exhaust administrative remedies and that the plaintiffs failed to state claims under either § 504 or the ADA.  (Docket Entry No. 5, at 12–15).  The plaintiffs amended their complaint in response to these arguments and responded that either they had exhausted administrative remedies or that exhaustion requirements did not bar their claims.  (Docket Entry No. 16, at 8–10).  In its reply, NCISD does not argue that exhaustion continues to present a basis for dismissal.  Rather, NCISD argues that the claims should be dismissed for failure to state a claim under Rule 12(b)(6).  (Docket Entry No. 17, ¶ 4).  The exhaustion arguments have been abandoned.  The issue is whether the plaintiffs have failed to state claims for relief.

"Title II of the ADA and § 504 of the Rehabilitation Act are enforceable through an implied private right of action."  *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011).  To prove a violation under Title II of the ADA, a plaintiff must show that: (1) that he is a qualified individual within the meaning of the ADA; (2) that he was excluded from participation in or denied the benefits of services, programs, or activities for which a public entity is responsible, or was otherwise subjected to discrimination by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.  *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004).  To recover monetary damages, a plaintiff must prove that the discrimination was intentional.  *Delano–Pyle v. Victoria County*, 302 F.3d 567, 574 (5th Cir. 2002).  Courts use similar liability standards in interpreting claims under the ADA and § 504.  *See D.A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 453 (5th Cir. 2010) ("Because this court has equated

11

liability standards under § 504 and the ADA, we evaluate D.A.'s claims under the statutes together."). "Section 504 has the additional requirement that the entity be a recipient of federal funds . . . ." *I.A. v. Seguin Indep. Sch. Dist.*, 881 F. Supp. 2d 770, 776 n.3 (W.D. Tex. 2012).[3]

The complaint as amended alleges that the defendants "significantly impacted [H.P.'s] access to services and educational modalities she was legally entitled to, thus denying her a Free and Appropriate Public Education" and that "New Caney ISD failed to develop and devise appropriate training modalities for staff such as Tracie Barnett and failed to properly supervise staff and educate them on proper methods of discipline related to H.P.'s Individual Education Plan, significantly impeding her educational development and causing a deprivation of educational benefits from 2010 forward, thus denying her . . . a Free and Appropriate Public Education." (Docket Entry No. 15, ¶¶ 23–24). "The actions of Defendants and [their] failure to act following the report of Defendant Barnet[t]'s actions were discriminatory and based solely on H.P.'s disability." (*Id.*, ¶ 24). In other words, there are no allegations to the effect that the alleged "exclusion, denial of benefits, or discrimination [was] by reason of the plaintiff's disability," *see Melton*, 391 F.3d at 671–72, other than the failure to act after the May 17 incident.

NCISD argues that the plaintiffs have not alleged that H.P. was denied anything or discriminated against because of her disability. As discussed above, the "failure to act" following the May 17 incident does not allege discrimination based on disability, because the plaintiffs' allegations and exhibits show that NCISD did have policies against abusive treatment of students and did take corrective measures in response to the acts that were reported. But dismissal is not proper on the basis argued by NCISD based on the allegations in the pleadings.

---

[3] NCISD argued that the § 504 claim must be dismissed because the plaintiffs failed to allege that NCISD receives federal funding. (Docket Entry No. 5, at 14). This argument is moot because the amended complaint alleges that NCISD receives federal funding. (Docket Entry No. 15, ¶ 5).

Construing the allegations in the plaintiffs' favor, the plaintiffs have alleged that:

- Barnett used the specified excessive physical discipline on H.P.;

- Barnett used excessive physical discipline to intimidate and discipline H.P. because of difficulties communicating with H.P. due to her disabilities;

- the excessive physical discipline amounted to abuse;

- the mental and emotional consequences of the abuse on H.P. interfered with her education.

The alleged facts are sufficient to state a claim under § 504 and the ADA. The allegations state that H.P. qualified as a disabled person under the statutes, that she was denied her education because of the alleged abuse and its consequences, and that the denial was discriminatory by reason of her disability. *See id.* The motion to dismiss these claims is denied.

### D.    State-Law Negligence Claims

The plaintiffs have attempted to assert various state-law tort claims, including for negligence and *respondeat superior* liability. Under Texas law, NCISD is a governmental unit. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3)(B). For these tort claims to go forward, NCISD must waive its sovereign immunity. *See, e.g.*, *Hobart v. City of Stafford*, 784 F. Supp. 2d 732, 759 (S.D. Tex. 2011). The Texas Torts Claims Act ("TTCA") provides a limited waiver of immunity for certain suits against governmental entities. TEX. CIV. PRAC. & REM. CODE ANN. § 101.021; *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008). The waiver of immunity, as it applies to school districts, covers only tort claims involving the use or operation of motor vehicles. TEX. CIV. PRAC. & REM. CODE ANN. § 101.051. The plaintiffs have not shown that NCISD waived its immunity and they do not allege a theory that would allow them to proceed under the TTCA. Tort claims against NCISD or against Thomas and Barnett in their official capacities fail as a matter

of law.

Additionally, the plaintiffs' claim that NCISD is responsible for the actions of its employees or agents fails as a matter of law. Under Texas law, a governmental entity like NCISD is "immune from liability for the alleged negligence of its agents . . . except to the extent immunity is waived by the Texas Tort Claims Act." *Pierson v. Hous. Indep. Sch. Dist.*, 698 S.W.2d 377, 380 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.). Because the plaintiffs have asserted no allegations that would invoke TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021 and 101.051 (injury resulting from the operation of a motor vehicle), all claims based on a *respondeat superior* theory must be dismissed.

Finally, under the Texas election of remedies law, "if a suit is filed under [the Texas Tort Claims Act] against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(e). "[A]ll tort theories alleged against a governmental unit . . . are assumed to be 'under [this chapter of the Texas Tort Claims Act]' for purposes of section 101.106." *Mission*, 253 S.W.3d at 658. The plaintiffs have sued both NCISD, the governmental unit, and Thomas and Barnett, as individuals, asserting negligence-based tort claims. Applying the Texas election of remedies provision, all state-law tort claims against Thomas and Barnett must be dismissed.

The plaintiffs' tort claims are dismissed with prejudice because amendment would be futile as a matter of law.

### E.    Qualified Immunity

NCISD moved to dismiss the claims against the individual defendants in their individual capacities based on qualified immunity. (Docket Entry No. 5, at 16). The plaintiffs' second

amended complain asserts claims only against Thomas and Barnett.  The arguments for dismissing Franklin and Baecker are moot.  NCISD's reply, however, addressed only the plaintiffs' qualified immunity arguments directed to Thomas.  (Docket Entry No. 17, ¶ 5).  The defendants do not argue that Barnett is entitled to qualified immunity.

Section 1983 provides a cause of action against an individual who, acting under color of state law, has deprived a person of a federally protected statutory or constitutional right.  Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  To determine whether qualified immunity applies, courts use the two-part analysis set forth in *Saucier v. Katz*, 533 U.S. 194 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009).  Courts must decide "(1) whether facts alleged or shown by plaintiff make out the violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct."  *Pasco v. Knoblauch*, 566 F.3d 572, 579 (5th Cir. 2009).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Lytle v. Bexar County*, 560 F.3d 404, 410 (5th Cir. 2009) (quoting *Saucier*, 533 U.S. at 202).

As the en banc Fifth Circuit recently held:

When considering a defendant's entitlement to qualified immunity, we must ask whether the law so clearly and unambiguously prohibited his conduct that "every 'reasonable official would understand that what he is doing violates [the law].'"  To answer that question in the affirmative, we must be able to point to controlling authority — or a "robust 'consensus of persuasive authority'" — that defines the contours of the right in question with a high degree of particularity.

*Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (en banc) (alteration in original) (quoting

15

*Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2083, 2084 (2011)) (internal footnotes omitted). "Qualified immunity balances two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012) (internal quotation marks omitted). Plaintiffs have the burden of overcoming the qualified immunity defense. *Bennett v. City of Grand Prairie*, 883 F.2d 400, 408 (5th Cir. 1989).

The plaintiffs argue that Thomas is not entitled to qualified immunity because she "knew or should have known of the established constitutional rights of H.P. and other statutory protections afforded to her." (Docket Entry No. 16, at 10–11). The only supporting allegation offered for the claim of Thomas's "objectively unreasonable" failure to supervise or discipline Barnett consists of an allegation that Barnett posed a "clear and obvious threat" to H.P. (*Id.* at 11). Even taken as true and in the light most favorable to the plaintiffs, none of the allegations support this conclusion. As discussed above, the allegations do not show that Thomas or other NCISD employees knew (or should have known) that Barnett posed a threat of physical violence to H.P. Nor do the plaintiffs allege facts or cite authority that would support a claim that all reasonable officials in the same position as Thomas would have (or should have) known that failing to act differently following the May 17 incident would result in a violation of H.P.'s rights. Thomas is entitled to qualified immunity. All claims against her in her individual capacity are dismissed with prejudice because further leave to amend would be futile.

**IV.    Conclusion**

16

The motion to dismiss is granted in part and denied in part.  It is denied as to the § 504 and ADA claims and as to the § 1983 claim against Barnett in her individual capacity, and otherwise granted.

SIGNED on May 23, 2013, at Houston, Texas.

Lee H. Rosenthal
United States District Judge